UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RACHEL W.,

                      Plaintiff,                        **DECISION AND ORDER**

          v.
                                                1:23-CV-00643 EAW

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Rachel W. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 16), and Plaintiff's reply (Dkt. 17). For the reasons discussed below, the Commissioner's motion (Dkt. 16) is granted, and Plaintiff's motion (Dkt. 10) is denied.

- 1 -

## BACKGROUND

Plaintiff protectively filed her application for DIB on November 8, 2017, and an application for SSI on November 16, 2017. (Dkt. 5 at 102-03).[1] In her applications, Plaintiff alleged disability beginning March 24, 2017, due to a bulging disc, muscle spasms in her neck, right shoulder rotator cuff injury, diabetes, anxiety/depression, supraventricular tachycardia, high blood pressure, asthma, and hernia. (*Id.* at 67, 85). Plaintiff's applications were initially denied on January 29, 2018. (*Id.* at 109-24). A video hearing was held before administrative law judge ("ALJ") Roxanne Fuller in Rochester, New York, on February 18, 2020. (*Id.* at 42-65). On March 19, 2020, the ALJ issued an unfavorable decision. (*Id*. at 18-36). Plaintiff requested Appeals Council review; her request was denied on December 15, 2020. (*Id*. at 7-12).

Plaintiff appealed the decision to the United States District Court for the Western District of New York, and on May 16, 2022, by Stipulation and Order, the parties agreed to remand the matter to the Commissioner for further administrative proceedings. (Dkt. 7 at 583-85). The ALJ held another hearing on January 12, 2023. (Dkt. 8). On March 7, 2023, the ALJ issued an unfavorable decision. (Dkt. 7 at 521-45). This action followed.

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

## LEGAL STANDARD

### I.      District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

### II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in

substantial gainful work activity.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. §§ 404.1509, 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. §§ 404.1520(g), 416.920(g).  To do so, the Commissioner must present evidence to

demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on March 31, 2022.  (Dkt. 7 at 527).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since March 24, 2017, the alleged onset date.  (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "degenerative disc disease; right shoulder tendinopathy; bilateral carpal tunnel syndrome (CTS); obesity; diabetes; depressive disorder; and generalized anxiety disorder."  (*Id.*).  The ALJ further found that Plaintiff's medically determinable impairments of supraventricular tachycardia, high blood pressure, and asthma were non-severe.  (*Id.* at 527-28).  With respect to Plaintiff's representation that she suffered from a hernia, the ALJ concluded that this was not a medically determinable impairment.  (*Id.* at 528).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*).  The ALJ particularly considered the criteria of Listings 1.15, 1.16, 1.18, 9.00, 11.14,

12.04, and 12.06 in reaching her conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 19-2p. (*Id.* at 528-31).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> occasional climb ramps or stairs, never climb ladders, ropes, or scaffolds; occasional balance, stoop, crouch, kneel, crawl; frequent reaching in all directions with the right dominant arm; frequent but not constant handling objects and fingering with both hands; occasional exposure to moving mechanical parts; no operating a motor vehicle; occasional exposure to unprotected heights; able to perform routine and repetitive tasks; only occasional interaction with public, co-workers, and supervisors.

(*Id.* at 531). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 543).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of price marker, mail room clerk, and packager. (*Id.* at 543-44). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 544).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ erred in crafting the RFC because she "cherry picked" evidence, and (2) the ALJ erred by failing to reconcile the opinion of the psychiatric consultative examiner with the RFC, after finding the opinion to be partially persuasive. (Dkt. 10-1 at 1, 28-35). The

Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.

### A.    <u>The RFC Determination</u>

Both of Plaintiff's arguments concern the ALJ's formulation of the RFC. In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id.*, an ALJ is not a medical professional, and therefore he "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).

However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)).

In arriving at the RFC, the ALJ's reasoning "must always be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and

rendered a decision supported by substantial evidence." *Gail F. v. Comm'r of Soc. Sec.*, No. 21-CV-120-FPG, 2022 WL 17578465, at *4 (W.D.N.Y. Dec. 12, 2022) (quotations and citation omitted).

### B.     The Physical RFC

Plaintiff's first argument is that the ALJ "cherry picked" evidence in formulating the physical RFC. (Dkt. 10-1 at 28-31). Plaintiff focuses specifically on the ALJ's finding that Plaintiff can reach on an occasional basis. (*Id*. at 28 (arguing that the ALJ's selective reliance on evidence "left the portion of the RFC limiting Plaintiff to occasional reaching unsupported by substantial evidence")). In response, the Commissioner contends that the ALJ properly considered the evidence in determining Plaintiff's physical RFC, including by considering the opinion evidence in connection with Plaintiff's right shoulder impairment. (Dkt. 16-1 at 5-15).

It is well-settled that "an ALJ is not permitted to 'cherry pick' evidence that supports his RFC finding." *Michelle J. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00306 CJS, 2023 WL 2623587, at *4 (W.D.N.Y. Mar. 24, 2023) (defining cherry-picking as "inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source" (citations omitted)). "Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022); *see also Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) ("When viewed alongside the evidence of the apparently cyclical nature of Estrella's depression, the ALJ's two cherry-picked treatment

notes do not provide 'good reasons' for minimizing Dr. Dron's opinion.").  However, "an allegation of cherry-picking is seldom successful because crediting it would require a court to re-weigh record evidence," and "what a claimant may label as cherry-picking can often be described more neutrally as weighing the evidence."  *Lisa T. v. Kijakazi*, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *3 (D. Conn. June 21, 2022) (quotations and citations omitted).

Plaintiff argues that the ALJ cherry picked evidence and did not discuss certain evidence supporting greater restrictions with respect to Plaintiff's right shoulder impairment.  (*See, e.g.*, Dkt. 10-1 at 29-31 (arguing that the ALJ relied on a non-examining state agency opinion and did not discuss certain records showing reduced range of motion in the shoulder, and citing to medical records from before Plaintiff's surgery or shortly after the surgery)).  Plaintiff's characterization of the written determination as cherry picking evidence is not supported by the record.  Rather, as explained below, the written determination makes plain that the ALJ considered Plaintiff's history of right arm pain, her testimony regarding her functioning, the medical opinion evidence, and treatment records, in concluding that Plaintiff was capable of lifting and carrying consistent with the requirements of performing light work (*i.e.*, lifting and carrying 10 pounds frequently and 20 pounds occasionally), and for performing frequent reaching in all directions with the right arm.

The ALJ first discussed Plaintiff's rotator cuff injury, as well as her testimony that she could not lift more than five pounds and tends to drop things, and that her daughter helps her with some activities of daily living.  (*See* Dkt. 7 at 531-32).  The ALJ noted that

Plaintiff's injury was caused by a slip-and-fall incident at work in March 2017, which resulted in an injury to her back and right shoulder. (*Id*. at 532). Subsequent testing revealed normal range of motion in her joints, but with pain, and an MRI of her right shoulder showed tendinopathy of the right tendon and mild arthropathy of the right acromioclavicular joint with minimal spurring. (*Id*.).

On November 2, 2017, due to her pain, Plaintiff underwent a right shoulder arthroscopic decompression. (*Id*. at 533). The ALJ noted that following the surgery, Plaintiff reported some postoperative discomfort which slowly improved with time, and on examination, Plaintiff walked with a well-balanced gait, and she displayed functional ranges of motion of the shoulders, elbows, wrists, hips, knees, and ankles, as well as full strength throughout, with intact sensations and reflexes. (*Id*.). Following surgery, Plaintiff reported that she had a greater level of functioning with physical therapy, and during a consultative examination in December 2017, Plaintiff had mild diffuse tenderness over the right shoulder and stable joints. (*Id*.; *see also* Dkt. 5 at 1050 (in April 2018, noting that Plaintiff had some discomfort, but "[s]ince the start of Physical Therapy the patient reports a 70% improvement toward full recovery")). The ALJ further noted that "[r]ecords from 2018 generally show that the claimant primarily received treatment for diabetes, suggesting that her physical impairments were mostly stable." (Dkt. 7 at 533; *see also id*. at 41-43 (treatment note from September 2019 from Pinnacle Orthopedic & Spine, noting "functional [range of motion] of shoulders," and full strength at the right upper extremity

and firm grip); *id*. at 137 (July 2018 treatment note, documenting normal range of motion in all joints and full strength throughout)).

After discussing this evidence, the ALJ concluded:

> In terms of her physical impairments, the claimant's pain steadily improved after she underwent a right-shoulder decompression surgery in 2017 and a lumbar decompression in 2019. Thereafter, the claimant effectively managed her pain with chiropractic treatment, physical therapy, medication, heat, ice, and a TENS unit. She reported significant relief with these treatments. Her physical examinations were also consistently unremarkable, as she had negative straight leg raise tests and exhibited full strength, normal grip strength in both hands, intact sensations and reflexes, good coordination, a normal gait, and a full range of motion in all joints.

(*Id*. at 535 (citations omitted)).

To support the RFC for lifting, carrying, and reaching with the right upper extremity, the ALJ also discussed the opinion offered by J. Koenig, M.D., the state agency medical consultant. (*Id*. at 537). Dr. Koenig opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, and that Plaintiff should be limited to occasionally reaching in the front, lateral, and overhead with her right upper extremity. (*Id*.; *see also* Dkt. 5 at 75-78). The ALJ explained that he found the opinion "somewhat persuasive," noting specifically Dr. Koenig's opinion with respect to reaching:

> As noted above, the claimant did undergo surgery on the right shoulder to improve her functioning, with the result of that surgery demonstrated an overall improvement of her capabilities with the right upper extremity, with the claimant showing full strength in the joint (Exhibit 12F/4), and affirming that she had improvement in the joint, by at least 70% (Exhibit 19F/38). Post-surgery, in November 2017, the claimant was able to show good range of motion in the right shoulder, with full strength throughout (Exhibit 9F/8, 30). The claimant affirmed that surgery, and subsequent physical therapy, and also improved her shoulder pain (Exhibits 18F/34, 19F/56). As such, Dr. Koenig's restriction to "occasional" reaching in all directions is not supported by the medical findings, though given the claimant's history of

right shoulder impairment, the undersigned has restricted her to "frequent"
reaching in front, laterally, and overhead.

(Dkt. 7 at 537-38; *see also id*. at 538-39 (discussing that October and November 2017
opinions by Karen Pellicore, FNP, and Cheryle Hart, M.D., that Plaintiff could engage in
only "negligible" force in the arms was not supported by the record, including because
Plaintiff reported she had improvement with the right shoulder after that time, and medical
findings from the past three years demonstrated that Plaintiff had mostly intact strength
and neurological findings); *id*. at 539 (discussing 2017 opinions by Anish Patel, RPA, and
Geoffrey Gerow, a chiropractor, who opined that Plaintiff could not reach overhead or lift
with her right arm, and finding them unsupported by the record, which showed that Plaintiff
had "greater ability to at least frequently reach in all directions with the right arm, and
frequently handle and finger, bilaterally")).

Plaintiff takes issue with the fact that the ALJ did not discuss certain medical records
showing that Plaintiff did not have a full range of motion in her right shoulder following
her surgery.   Plaintiff acknowledges that evidence in the medical record demonstrated
functional range of motion in the shoulder, but argues that the ALJ "downplayed" other
records.  (Dkt. 10-1 at 30).  As an initial matter, and ALJ is not required to discuss every
shred of evidence in the record in reaching a conclusion—rather, the ALJ must articulate
how the disability determination is supported by substantial evidence, and provide an
explanation that allows for meaningful review on appeal.  *See Brault v. Comm'r of Soc.
Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) ("Although required to develop the record fully and
fairly, an ALJ is not required to discuss every piece of evidence submitted." (citation
omitted)).  Further, to the extent there were medical records with differing assessments of

Plaintiff's shoulder functioning, where there is conflicting evidence in the record, it is the ALJ's duty to consider and weigh those discrepancies. It is not the court's function to re-weigh the evidence. *See, e.g., Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). Here, the ALJ's assessment of the evidence of Plaintiff's shoulder functioning was proper and well-supported by the record. As explained above, the ALJ acknowledged Plaintiff's complaints of right shoulder pain, but concluded that the record as a whole supported improved right shoulder functioning following surgery and treatment and Plaintiff's ability to reach on a frequent basis.

In sum, it is clear from the discussion in the written determination that the ALJ carefully considered Plaintiff's right shoulder impairment, and the finding that Plaintiff's right shoulder functioning improved following her surgery is supported by medical evidence in the record. It is likewise clear to the Court how the ALJ arrived at the limitations for frequent reaching. Plaintiff's argument regarding the evidence supporting Plaintiff's shoulder impairment amounts to no more than disagreement with the ALJ's weighing of the evidence, and therefore remand is not required on this basis.

C.     <u>Consideration of the Consultative Examiner's Opinion</u>

Plaintiff's second and final argument is that remand is warranted because the ALJ failed to reconcile the psychiatric consultative examiner's opinion with the RFC. (Dkt. 10-1 at 31-35). Specifically, Plaintiff argues that the ALJ found the opinion offered by Gregory Fabiano, Ph.D., to be partially persuasive, but then failed to include moderate limitations from the opinion in the RFC. (*Id.* at 31 (arguing that the ALJ needed to either

include the moderate limitations for regulating emotion, controlling behavior, and maintaining well-being, or explain why they were rejected)). In response, the Commissioner contends that the ALJ's consideration of Dr. Fabiano's opinion was supported by substantial evidence. (Dkt. 16-1 at 15-24).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id.* Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* at §§ 404.1520c(c), 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id.* at §§ 404.1520c(a), 416.920c(a). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at

§ 404.1520c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must articulate her consideration of the medical opinion evidence, including how persuasive she finds the medical opinions in the case record. *Id*. at §§ 404.1520c(b), 416.920c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec*., No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how she considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may—but is not required to—explain how she considered the remaining factors. *Id*.

Dr. Fabiano examined Plaintiff on December 27, 2017. (Dkt. 5 at 890-95). Following a mental status examination, Dr. Fabiano opined that Plaintiff:

> appears to have mild limitations in her ability to understand, remember and apply simple directions and instructions and moderate limitations in her ability to understand, remember, and apply complex directions and instructions. The claimant appears to have moderate limitations in her ability to interact adequately with supervisors, coworkers, and the public and regulate emotions, control behavior, and maintain well-being. The claimant does not appear to have evidence of limitations in her ability to use reason and judgment to make work-related decisions; sustain concentration and

perform a task at a consistent pace; sustain an ordinary routine and regular
attendance at work; maintain personal hygiene and appropriate attire; or have
awareness of normal hazards and take appropriate precautions. Difficulties
are caused by distractibility and mental health symptoms.

(*Id*. at 893).

The ALJ discussed Dr. Fabiano's opinion in the written determination, finding that

the opinion was "persuasive in part":

> Dr. Fabiano's findings are supported by his own evaluation of the claimant.
> Furthermore, Dr. Fabiano adequately supported an assessment of no more
> than moderate limitations in any area of mental functioning by referencing
> generally normal findings from his personal examination, such as the
> claimant's coherent thought processes, cooperative demeanor, intact
> attention, and good judgment and insight. However, Dr. Fabiano found no
> significant limitations in the claimant's ability to sustain concentration and
> persistence, but the record evidence is consistent with at least moderate
> limitations in this area. In making this determination, the undersigned
> considered the claimant's testimony to poor motivation, excessive sleep and
> fatigue, and impaired focus, as well as her distractibility during his
> consultative examination. Nonetheless, the claimant has shown consistently
> that [she] is capable of normal attention and concentration, with good mood
> and focus, especially when she is taking medication.

(Dkt. 7 at 541-42 (citations omitted)).

Here, the RFC limits Plaintiff to performing routine and repetitive tasks, and only

occasional interaction with the public, co-workers, and her supervisors. Contrary to

Plaintiff's argument, the ALJ specifically explained in the written determination how she

arrived at the mental portion of the RFC. (*See id*. at 542-43 ("The claimant's unremarkable

mental status examinations, revealing goal directed thought processes, normal insight and

judgment, and good attention and concentration, support her ability to perform routine and

repetitive tasks. Given the claimant's testimony to social anxiety and panic attacks, she

can have only occasional interaction with the public, co-workers, and supervisors. The

totality of the evidence does not support greater restrictions.")).  Further, the assessed RFC accommodates Dr. Fabiano's opinion that Plaintiff had mild-to-moderate mental limitations.  *See, e.g., John B. v. Kijakazi*, No. 21-CV-0252L, 2023 WL 24046, at *1-2 (W.D.N.Y. Jan. 3, 2023) (limiting plaintiff to simple, routine, repetitive tasks, simple work-related decisions, and only occasional interaction with supervisors, coworkers, and the public, accounted for plaintiff's "moderate" mental limitations, including adapting or managing himself); *Bethany A. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1267 (WBC), 2022 WL 170405, at *1, 4-5 (W.D.N.Y. Jan. 18, 2022) (explaining that "[a] finding of moderate limitations in mental functioning does not preclude the ability to perform unskilled work," and finding that RFC limiting the plaintiff to simple repetitive tasks with additional social limitations was sufficient to accommodate the consultative examiner's opinion that the plaintiff had moderate limitations in her ability to understand, remember, or apply complex directions and instructions, interact adequately with supervisors, co-workers, and the public, and regulate emotions, control behavior, and maintain well-being).

In addition to Dr. Fabiano's opinion, the ALJ cited to other evidence in the record demonstrating that Plaintiff retained the mental capacity to perform routine and repetitive tasks, with occasional interaction with others.  For example, the ALJ discussed Plaintiff's mental health records, noting that while Plaintiff appeared overwhelmed and depressed at some appointments, on testing she was pleasant and cooperative, had clear speech and goal-directed thoughts, and normal insight, judgment, and cognition.  (Dkt. 7 at 534; *see also id*. at 535 (discussing records from 2018 and 2019, and noting that during counseling sessions, Plaintiff stated she was doing well but felt a little fatigued and cranky during the

day, she appeared pleasant and cooperative, her speech was clear and coherent, and her thought processes were goal directed, she displayed normal insight and judgment with intact cognition, and had normal memory and good attention and concentration)).  The ALJ also discussed Plaintiff's testimony with respect to her activities of daily living, including that she independently manages her personal care, cares for her dog and 13-year-old daughter, shops in stores, handles her own finances, and completes household chores, and while Plaintiff testified to social withdrawal, she also stated that she has some close friends with whom she socializes, and good family relationships.  (*Id*.).  Further, during the relevant period, Plaintiff conservatively managed her mental health with counseling and psychotropic medications, and by 2019, she reported stable mental health.  (*Id*.).

In sum, Plaintiff has failed to illustrate how the RFC limitation to routine, repetitive tasks with occasional interaction with others has failed to account for Plaintiff's mild-to-moderate mental limitations, including her limitations for regulating emotions, controlling behavior, and maintaining well-being.  Plaintiff points to no evidence supporting that other or further limitations were necessary.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC, and failed to do so.").  Accordingly, remand is not required on this basis.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 16) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: June 3, 2024
       Rochester, New York